UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DENISE RICHIR,

                Plaintiff,

                                        **Hon. Hugh B. Scott**

                v.

                                        05CV76S

                                        **Order**

VILLAGE OF FREDONIA, NEW YORK, et al.,

                Defendants.

Before the Court is plaintiff's motion to compel and for extension of the scheduling Order (Docket No. 61[1], see Docket No. 50 (scheduling Order)). The Order setting forth the briefing schedule for this motion held the scheduling Order deadlines in abeyance pending resolution of this motion. Responses to this motion were due by February 28, 2008, any reply by March 6, 2008, and the motion was deemed submitted (without oral argument) on March 6, 2008. (Docket No. 62.) Also pending is defendants' motion to dismiss the Second Amended Complaint (Docket No. 52).

## BACKGROUND

*Factual Background*

This is a civil rights action. According to plaintiff's Second Amended Complaint (Docket No. 47), plaintiff alleges claims against the Village of Fredonia, its police department,

---

[1] In support of her motion, plaintiff filed her attorney's affidavit (with exhibits), Docket No. 61, and her attorney's reply affidavit, Docket No. 64. In opposition, the Village of Fredonia and defendants affiliated with the village (collectively "Village defendants") filed their attorney's affidavit, Docket No. 63.

police chief Bradley Meyers, John Doe officers of the village police force, and Chautauqua County and its officers[2] (id. ¶¶ 6-13). Plaintiff claims that she was falsely arrested on February 4, 2004, that she suffered trespass and excessive force during her arrest (id. ¶ 15), and that she was arrested and Village defendants again trespassed on her property on February 9, 2004 (id. ¶ 16). She alleges that she was falsely prosecuted by Chautauqua County defendants (id. ¶ 17). She alleges claims for false arrest, excessive force, and false imprisonment from the February 4, 2004, arrest (id. ¶¶ 18-23, 24-29, 30-34). In particular, she claims that she was forcibly removed from her home and not advised of the charge against her (id. ¶¶ 19-20). Then, plaintiff was questioned about her live-in boyfriend (Gary Ortolano, see Docket No. 64, Pl. Atty. Reply Aff. ¶ 8) but not pertaining to any criminal investigation but subjected to humiliating questions about her private life (Docket No. 47, 2d Am. Compl. ¶¶ 21, 22). Plaintiff's claim regarding excessive force stems from the police refusal to allow her to place a neck brace on prior to her arrest (since she suffered from a previous automobile accident) and the substantial physical force applied to her in the arrest (id. ¶¶ 26, 25, 27-28).

According to the Village defendants, plaintiff's mother and brother called the Fredonia police on February 4, 2004, and asked that they conduct a "well-being" visit of plaintiff (see Docket No. 63, Village Defs. Atty. Aff. ¶ 8).

As for the February 9, 2004, arrest, plaintiff claims false arrest and false imprisonment, (Docket No. 47, 2d Am. Compl. ¶¶ 35-40, 41-45[3]). Against the Village defendants, plaintiff

---

[2]These include the county's district attorney's office, District Attorney James Subjack, and Assistant District Attorney Jason Schmidt, Docket No. 47, 2d Am. Compl. ¶¶ 11-13.

[3]Cf. Docket No. 61, Ex. F, letter of Oct. 19, 2005, from plaintiff's counsel to Village defendants' counsel denying that February 9, 2004, incident is alleged in this case; Docket

alleges common law trespass, and against all defendants emotional distress (id. ¶¶ 58-64, 65-69). Against the Chautauqua County defendants, plaintiff alleges malicious prosecution and denial of due process (id. ¶¶ 46-52, 53-57).

*Procedural History*

Plaintiff filed her original Complaint on February 3, 2005 (Docket No. 1), and the case initially was assigned to Judge John Elfvin. The Village defendants answered (Docket No. 14) and Chautauqua County and affiliated county defendants moved to dismiss (Docket No. 15) on ripeness grounds (among other grounds) (see Docket No. 36, Pl. Atty. Aff. in support of motion to amend Compl. ¶ 6), which was granted on May 16, 2005 (Docket Nos. 23, 21). By stipulation plaintiff filed her first Amended Complaint (Docket No. 26) excluding claims against Chautauqua County and its affiliates. The Village defendants answered the first Amended Complaint (Docket No. 28). In the scheduling Order for this case, Judge Elfvin referred this case to the undersigned for settlement purposes (Docket No. 29). Plaintiff later moved to amend this pleading (Docket No. 36) (in part to reassert claims against the Chautauqua County defendants), which was granted on October 2, 2007 (Docket No. 45; see Docket No. 47). In the Order granting leave to amend the Complaint, Judge Elfvin referred pretrial matters to the undersigned (Docket No. 45). Prior to the Village defendants answering the Second Amended Complaint (see Docket No. 51), this case was reassigned to Judge William Skretny (Docket No. 48). The Court then entered an Amended Scheduling Order (on October 30, 2007) which had plaintiff's expert disclosure due by February 1, 2008, concluded discovery by March 28, 2008, set a settlement

---

No. 25, stipulation filed July 25, 2005; Docket No. 26, stipulation so ordered.

conference for April 8, 2008, before the undersigned, and had dispositive motions due by April 25, 2008 (Docket No. 50).

The Chautauqua County defendants moved to dismiss the Second Amended Complaint as to them (Docket No. 52).

*Plaintiff's Motions*

Plaintiff now moves for extension of time to complete discovery, including making her expert disclosure, as well as to compel the Village defendants to answer her Interrogatories or submit to depositions (Docket No. 61, Pl. Atty. Aff. ¶ 3, Wherefore cl., Ex. B (Interrogatories and Demand for Documents upon Meyers or policy maker for Village of Fredonia). As follow up to the deposition of Fredonia police sergeant Paul Luce and defendant chief Meyers on April 6, 2006, plaintiff sought production of several categories of documents (Docket No. 61, ¶ 4, Ex. A). Plaintiff's counsel terms Luce to be a "defendant" (id. ¶ 4), although not stating whether he was one of the John Doe village police officer defendants. Plaintiff, in October 2006, served Interrogatories with document demands upon Meyers and the Village for response either by Meyers or by the policy maker for the Village (id. ¶ 5, Ex. B). Plaintiff wrote in November 2006 and December 2007 requesting responses to these demands (id. ¶¶ 6-7, Exs. C, D). Plaintiff then called defense counsel's office, on or about January 30, 2008, noting that a motion to compel is being prepared unless these requests were responded to and, to date, no production was made by the Village's defense counsel (id. ¶ 8). Plaintiff submitted her Interrogatories in lieu of deposing Meyers a second time as the policy maker (see id. ¶ 25, Ex. H).

Plaintiff seeks an extension of time to complete discovery. She notes that the Chautauqua County defendants have not participated in discovery and only recently have been returned to this

case (Docket No. 61, Pl. Atty. Aff. ¶ 18). Plaintiff is uncertain which expert witnesses will be necessary, given the lack of discovery from the Chautauqua County defendants (id. ¶ 19). Plaintiff cannot submit expert opinions absent answers to her Interrogatories by Meyers and village officials (id. ¶ 16) and whatever expert disclosure that has been made (primarily to the Village defendants) needs to be supplemented (id. ¶¶ 18, 20). Plaintiff accuses the Village defendants of delaying the earlier stages of this case (id. ¶¶ 21-23).

The motion to compel is addressed to the Village defendants and they responded (Docket No. 63). They raised various areas where they seek Court input on how they should respond to plaintiff's demands, in particular requesting to submit some items for in camera review to determine whether they should be produced.

## DISCUSSION

I.   Standards

   A.   Motion to Compel

Discovery under the Federal Rules is intended to reveal relevant documents and testimony, but this process is supposed to occur with a minimum of judicial intervention. See 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2288, at 655-65 (Civil 2d ed. 1994). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense–including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons having knowledge of any discoverable matter." Fed. R. Civ. P. 26(b)(1) (effective Dec. 1, 2007). For good cause the Court may order discovery "of any matter relevant to the subject matter involved in the action" with relevant information not

necessarily admissible at trial to be discoverable, and "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence," id.

Federal Rule of Civil Procedure 37(a) allows a party to apply to the Court for an order compelling discovery, with that motion including a certification that the movant in good faith conferred or attempted to confer with the party not making the disclosure to secure that disclosure without court intervention.  Fed. R. Civ. P. 37(a)(2)(A).

For interrogatories, the failure to make a timely objection may subject the objection to waiver unless the Court, for good cause, excuses the failure, Fed. R. Civ. P. 33(b)(4).

  B. Extension of Scheduling Order

Modification of a Scheduling Order is done only upon a showing of good cause.  Fed. R. Civ. P. 16(b); see 6A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1522.1, at 230-31(Civil 2d ed. 1990).  "In the absence of some showing of why an extension is warranted, the scheduling order shall control."  Id. at 231.  This Court has broad discretion in preserving the integrity of its Scheduling Orders, see Barrett v. Atlantic Richfield Co., 95 F.3d 375, 380 (5th Cir. 1996), including the discretion to extend its deadlines when good cause is shown.

II. Application

  A. Motion to Compel

Plaintiff demands six categories of documents as a follow up to deposing Sergeant Luce, and three categories of documents from defendant Meyers' deposition (Docket No. 61, Ex. A; see Docket No. 63, Village Defs. Atty. Aff. ¶¶ 4-9, 10-12).

1.      Luce Demands

First, plaintiff seeks a full copy of the village police department's General Orders that were in effect on February 4, 2004 (Docket No. 61, Ex. A, Luce Request No. 1). The Village defendants are willing to provide them (Docket No. 63, Village Defs. Atty. Aff. ¶ 4). They should do so forthwith and plaintiff's motion is **granted** on this request.

Next, plaintiff seeks the unredacted copy of Sergeant Luce's personnel file (Docket No. 61, Ex. A, Luce Request No. 2; see Docket No. 63, Village Defs. Atty. Aff. ¶ 5). The Village defendants offer to produce a redacted version (excluding certain directory information, other irrelevant materials) or produce to the Court for prior in camera review (Docket No. 63, Village Defs. Atty. Aff. ¶ 5). Plaintiff, in her reply, does not object to such redaction provided the balance of the file is produced (Docket No. 64, Pl. Atty. Reply Aff. ¶ 5). Plaintiff's motion on this ground is **granted subject to the redactions of directory information** sought by the Village defendants and accepted by plaintiff.

Plaintiff's fourth demand seeks an unredacted copy of an investigation involving non-party Gary Ortolano (Docket No. 61, Ex. A, Luce Request No. 4). The Village defendants seek guidance on this request, offering to provide the file for in camera review (Docket No. 63, Village Defs. Atty. Aff. ¶ 7). The Village defendants did not indicate Ortolano's role in this case. Plaintiff replies, however, that the Village defendant made comments to her that they were after Ortolano and that she was warned not to continue living with him (Docket No. 64, Pl. Atty. Reply Aff. ¶ 8). Plaintiff's request for Ortolano's file is necessary for her theory that defendants used her mother's concern about plaintiff's well being "as a guise to harass and threaten her and to 'get' Mr. Ortolano" (id.). She does not object to prior in camera inspection of these materials.

Given that the file sought involves a third-party and background information to the events leading to this action, the Village defendants **should produce these documents to Chambers for <u>in camera</u> inspection** to determine relevant items to this action for production to plaintiff and redaction of irrelevant materials.

Next, plaintiff seeks a copy of a 1992 incident report regarding the theft of plaintiff's credit card (Docket No. 61, Ex. A, Luce Request No. 3). The Village defendants argue that this report is irrelevant to her present action (Docket No. 63, Village Defs. Atty. Aff. ¶ 6). She replies that this prior incident involves contact between the parties and that the material sought is not privileged (Docket No. 64, Pl. Atty. Reply Aff. ¶ 7). Plaintiff does not explain, however, how this 1992 incident is relevant to these 2004 events at issue in this case or how this incident report will lead to admissible evidence to compel defendants to produce it. Although possibly discussed during Luce's deposition, how the police investigated plaintiff's 1992 theft (by itself) is not relevant to her 2004 false arrest and related claims. Just because the report indicates prior contact by the parties does not alone justify producing otherwise ancient and irrelevant items. Thus, plaintiff's motion on this request is **denied**.

Plaintiff requests copies of reports, statements, or any other documents relating to conversations between Sergeant Luce and plaintiff's mother and brother on or about February 4, 2004 (Docket No. 61, Ex. A, Luce Request No. 5; Docket No. 63, Village Defs. Atty. Aff. ¶ 8). The Village defendants seek direction regarding this demand, arguing that plaintiff's February 4 arrest stemmed from her mother's and brother's request that the police conduct a "well-being" visit of plaintiff (Docket No. 63, Village Defs. Atty. Aff. ¶ 8). Plaintiff contends that defendants' uncertainty on this request is "simply a 'smoke screen' for failing to respond to the demand"

earlier (Docket No. 64, Pl. Atty. Reply Aff. ¶ 9). It is unclear what question defendants have about producing such documents (if they exist) or what claim of privilege or burden they may have to prevent production. These documents are clearly relevant to the issues in this case (going to the reason for the police approaching plaintiff in February 4, 2004) and **should be produced forthwith**.

The last request arising from Sergeant Luce's deposition is for the copy of the unredacted arrest and conviction record of Ortolano within the Village of Fredonia (Docket No. 61, Ex. A, Luce Request No. 6; see Docket No. 64, Pl. Atty. Reply Aff. ¶ 8). The Village defendants ask for direction whether they have to produce these records for a person not related to this action (Docket No. 63, Village Defs. Atty. Aff. ¶ 9). Disclosure of Ortolano's arrest record in Fredonia and his conviction record would lead to discovery of admissible evidence toward plaintiff's theory of police harassment of Ortolano and, by extension, of her (see Docket No. 64, Pl. Atty. Reply Aff. ¶ 8). As with the other records involving Ortolano, defendants should **submit them for in camera inspection by the Court** prior to producing those portions designated by the Court to plaintiff.

    2.    Meyers Demands

Plaintiff sought three categories of documents during the deposition of defendant Meyers (Docket No. 61, Ex. A). First, she sought a copy of the village police department's training file, and such training as pertains to Meyers or Luce from the dates of their employment to February 4, 2004 (id., Meyers Request No. 1). Next, she asked for copies of police reports, documents, incident reports, and the like regarding Ortolano in Fredonia from June 1998 to February 4, 2004 (id., Meyers Request No. 2) and a copy of all reports regarding Ortolano being

9

armed with a weapon, threatening suicide, and threatening to shoot any officer coming to the house (id., Meyers Request No. 3). The Village defendants again seek Court guidance producing information regarding Ortolano since he is not a party and has not authorized such disclosure (Docket No. 63, Village Defs. Atty. Aff. ¶¶ 11, 12).

Ortolano was plaintiff's live-in boyfriend in February 2004 and was the reason for the police's "well-being" visit of plaintiff for the first incident (see Docket No. 64, Pl. Atty. Reply Aff. ¶ 8). Thus, the police reports and documents about Ortolano **are relevant and should be disclosed**. As with the other documents involving Ortolano, these first **should be submitted to the Court for in camera inspection** to see if particular documents are relevant.

As for plaintiff's request for training materials, defendants found the demand unclear and seek clarification (Docket No. 63, Village Defs. Atty. Aff. ¶ 10). The Court's review of plaintiff's request finds that it is quite clear. It seeks the departmental training file as well as the personnel files for Meyers and Luce noting their training in various law enforcement subjects from their initial hiring until February 4, 2004 (Docket No. 64, Pl. Atty. Reply Aff. ¶ 10). Plaintiff also notes that the Village defendants for the first time seek clarification of this request made back in April 2006 (id.). One possible use of this material is to show the standard and level of training of the defendant chief Meyers and Sergeant Luce and how much they received as of the date of the first incident on dealing with potential arrest or domestic violence (for example) situations. Plaintiff's request on this ground is **granted**; defendants should produce these materials.

3.      The Timing of Production of the <u>In Camera</u> Items

The Village defendants are to submit to Chambers the <u>in camera</u> items discussed above (documents involving Gary Ortolano in plaintiff's fourth and sixth demands from the Luce deposition and the second and third demands from the Meyers deposition) within **ten (10) business days from entry of this Order**.

B.      Extension of Scheduling Order

Plaintiff and the Village defendants concede that plaintiff has had difficulty assembling her medical records (distinct from a prior automobile accident injury) and need additional time to do this, as well as to have plaintiff render expert reports (Docket No. 61, Pl. Atty. Aff. ¶¶ 16, 18-20; Docket No. 63, Village Defs. Atty. Aff. ¶ 15).  Plaintiff's ability to render all of her expert reports is also dependent upon whether the Chautauqua County defendants remain in the case (<u>see</u> Docket No. 61, Pl. Atty. Aff. ¶¶ 18, 19).  The Village defendants support extension of the Scheduling Order and they seek additional time for discovery including deposing plaintiff and conducing a medical examination of her (especially pertinent here since she claims that defendants exacerbated her pre-existing injuries) (Docket No. 63, Village Defs. Atty. Aff. ¶¶ 2, 14, 15).  Given their pending motion to dismiss, the Chautauqua County defendants have not responded to plaintiff's motion, including this portion regarding the scheduling for this case.

The Village defendants seek thirty days to answer plaintiff's Interrogatories (<u>id.</u> ¶ 13) but without explaining why they failed to respond from October 2006 to date.  Plaintiff objects to granting the Village defendants additional time to answer Interrogatories first posed in October 2006 (Docket No. 64, Pl. Atty. Reply Aff. ¶¶ 4, 11).  She also objects generally to granting the Village defendants additional time to respond to her outstanding discovery because defense

11

counsel "has made neither an attempt to provide the information requested, nor to explain the extreme delay, and has delayed this case for nearly a year and a half, by stating he needs court direction and/or clarification" (id. ¶ 11).

Plaintiff's motion, joined by the Village defendants, is **granted**. The difficulty here in setting an amended schedule is the pending motion to dismiss by the Chautauqua County defendants. The nature of the case changes depending upon the decision of that motion. Nevertheless, an amended schedule will be set on the current status of the parties (that is, assuming that the Chautauqua County defendants remain in the case). The deadlines below should afford all parties (whether the county defendants remain as parties or not) sufficient time to commence and complete discovery in this case. If the Chautauqua County defendants subsequently are dismissed, the remaining parties need not wait for these extended deadlines to proceed with this action.

Plaintiff's expert disclosure is due by **May 12, 2008**; defense expert disclosure is due by **June 23, 2008**; discovery concludes by **July 15, 2008**, with motions to compel discovery due by **June 16, 2008**; dispositive motions are due by **October 15, 2008**. The Court, by separate Order, will set the dates for the final pretrial conference before Judge Skretny and the date to start the trial.

C.      Motion Expenses

If a motion to compel is granted, the Court must award reasonable motion expenses, including attorney's fees, or, if relief is partially granted, apportion the reasonable expenses, Fed. R. Civ. P. 37(a)(5)(A), (C) (effective Dec. 1, 2007) (see Docket No. 64, Pl. Atty. Reply Aff.

¶ 12).  If production is made in the face of a motion to compel, the sanction of awarding these expenses must be imposed, id. R. 37(a)(5)(A).

Here, the Village defendants at a minimum must produce a copy of the department's General Orders, provide in camera inspection of various records, and produce the police training records for Meyers and Luce.  Plaintiff was denied production of her 1992 credit card theft records.  Therefore, she is entitled to recover her full reasonable costs in making this motion.  Plaintiff is to submit an affidavit of the total of her reasonable costs associated with this motion for the Court to determine the appropriate sanction award.  The Village defendants may file a response to the cost application.  The Conclusion of this Order sets forth the schedule for filing on this application.

## CONCLUSION

For the reasons stated above, plaintiff's motion to compel (Docket No. 61) is **granted in part, denied in part,** as indicated above.  The Village defendants shall produce the items ordered herein **forthwith**.  The Village defendants have **ten (10) business days from entry of this Order** in which to submit the in camera documents (namely documents involving Gary Ortolano) to Chambers for Court inspection.

Plaintiff's motion for extension of time to conduct discovery and the scheduling Order (Docket No. 61) is **granted**; plaintiff's expert disclosure is due by **May 12, 2008**; defense expert disclosure is due by **June 23, 2008**; discovery concludes by **July 15, 2008**, with motions to compel discovery due by **June 16, 2008**; dispositive motions are due by **October 15, 2008**.  The Court, by separate Order, will set the dates for the final pretrial conference before Judge Skretny and the date to start the trial.

Plaintiff shall file an affidavit of her reasonable motion expenses, including attorney's fees, within five (5) days of the entry of this Order; defendants may respond to this filing by filing a response within five (5) days of filing of plaintiff's affidavit. The Court then will determine plaintiff's reasonable motion expenses and the appropriate sanction amount.

So Ordered.

                                                             */s/ Hugh B. Scott*
                                                      Honorable Hugh B. Scott
                                                      United States Magistrate Judge

Dated: Buffalo, New York
        March 11, 2008