UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DENISE RICHIR,

                           Plaintiff,

                                                            **Hon. Hugh B. Scott**

                           v.

                                                             05CV76S

                                                             **Order**

VILLAGE OF FREDONIA, NEW YORK, et al.,

                           Defendants.
_____

This is a follow up to an earlier Order issued by this Court. Before the Court is plaintiff's motion to compel (Docket No. 61). This Court entered an Order compelling defendants to produce and to furnish certain items for in camera inspection to determine whether and the manner in which the documents would be produced (Docket No. 65). On or about March 20, 2008, defendants submitted to chambers the in camera items.

Also pending are the Chautauqua County defendants' motion to dismiss the Second Amended Complaint (Docket No. 52) before Judge William Skretny and plaintiff's fee application for her motion to compel (Docket No. 68) before the undersigned. The latter will be decided in a separate Order.

BACKGROUND

Familiarity with the previous Order (Docket No. 65) is presumed.

*Factual Background*

In this is a civil rights action, plaintiff alleges false arrest, use of excessive force, and false imprisonment claims against the Village of Fredonia, its police department, police chief

Bradley Meyers, John Doe officers of the village police force (collectively "Village defendants"), and malicious prosecution against defendants Chautauqua County and its officers (Docket No. 47, 2d Am. Compl. ¶¶ 6-13). Pertinent to this motion, plaintiff claims that she was falsely arrested on February 4, 2004, that she suffered trespass and excessive force during that arrest (id. ¶ 15), and that she was arrested and Village defendants again trespassed on her property again on February 9, 2004 (id. ¶ 16). She alleges claims for false arrest, excessive force, and false imprisonment from the February 4, 2004, arrest (id. ¶¶ 18-23, 24-29, 30-34). In particular, she claims that she was forcibly removed from her home and not advised of the charge against her (id. ¶¶ 19-20). Then, plaintiff was questioned about her live-in boyfriend (Gary Ortolano, see Docket No. 64, Pl. Atty. Reply Aff. ¶ 8) but not pertaining to any criminal investigation and she claims that she was subjected to humiliating questions about her private life (Docket No. 47, 2d Am. Compl. ¶¶ 21, 22). Plaintiff's claim regarding excessive force stems from the police refusal to allow her to place a neck brace on prior to her arrest (since she suffered from a previous automobile accident) and the substantial physical force applied to her during that arrest (id. ¶¶ 26, 25, 27-28). According to the Village defendants, plaintiff's mother and brother called the Fredonia police on February 4, 2004, and asked that they conduct a "well-being" visit of plaintiff (see Docket No. 63, Village Defs. Atty. Aff. ¶ 8). She alleges that she was arrested and imprisoned falsely again on February 9, 2004 (Docket No. 47, 2d Am. Compl. ¶¶ 35-45).

*Plaintiff's Motions*

     Plaintiff moved to compel the Village defendants to answer her Interrogatories or submit to depositions (Docket No. 61, Pl. Atty. Aff. ¶ 3, Wherefore cl., Ex. B (Interrogatories and Demand for Documents upon Meyers or policy maker for Village of Fredonia). As follow up to

the deposition of Fredonia police sergeant Paul Luce and defendant police chief Meyers on April 6, 2006, plaintiff sought production of several categories of documents (Docket No. 61, ¶ 4, Ex. A).  Plaintiff, in October 2006, served Interrogatories with document demands upon Meyers and the Village for response either by Meyers or by the policy maker for the Village (id. ¶ 5, Ex. B).  Plaintiff wrote in November 2006 and December 2007 requesting responses to these demands (id. ¶¶ 6-7, Exs. C, D).  Plaintiff then called defense counsel's office, on or about January 30, 2008, noting that a motion to compel is being prepared unless these requests were responded to and, to date, no production was made by the Village's defense counsel (id. ¶ 8).  Plaintiff submitted her Interrogatories in lieu of deposing Meyers a second time as the policy maker (see id. ¶ 25, Ex. H).  Plaintiff also sought an extension of time to complete discovery.

The Village defendants responded and raised various areas where they sought Court input on how they should respond to plaintiff's demands, in particular requesting to submit some items for in camera review to determine whether they should be produced (Docket No. 63).

*Order*

This Court ordered the Village defendants to produce for in camera inspection the investigation file for Gary Ortolano (Docket No. 65, Order at 7-8, 9-10, 13), and they were to produce the in camera items within ten days of entry of that Order (id. at 11, 13).  The Village defendants also were to produce forthwith copies of the village police department's General Orders in effect on February 4, 2004; redacted copy of Sergeant Luce's personnel file, correspondence between Luce and plaintiff's mother and brother, police department training file and police chief Meyers' personnel file (id. at 7, 8-9, 10).  The Court also granted an extension of the Scheduling Order for this case (id. at 11-12, 13; Docket Nos. 66, 67) and scheduled plaintiff

to submit her reasonable motion costs as a sanction (Docket No. 65, Order at 12-13, 14; see Docket No. 68).

*In camera* Items

The Village defendants then provided to the Court a copy of the Fredonia police department's file on Gary Ortolano. The file consists of charges Ortolano incurred within the village of Fredonia and did not include charges in other jurisdictions. The documents include the names of alleged victims and their addresses. The first document is a Global Subject Activity Report for Ortolano, listing his arrests by the Fredonia police department from December 1991 to January 2007. They also provided dozens of case reports involving Ortolano, which identify the reporting police office as well as the facts leading to Ortolano's arrest. The Village defendants included an Aegis Public Safety System Adult Profile Sheet (hereinafter "Aegis") for Ortolano, listing arrests and subsequent dispositions for various incidents from January 1994 to June 2004.

The Village defendants also produced the Case Report for the February 4, 2004, arrest (Pl. Ex. 1 from Apr. 6, 2006, deposition); the village police department's General Order regarding domestic violence (Pl. Ex. 2 from Apr. 6, 2006, deposition); an October 1998 memorandum from defendant Meyers regarding domestic violence training to be taken by listed officers; a sign-in sheet for a similar training in July 1998 attended by Luce; a press release announcing a commendation for Luce.

DISCUSSION

I.   Standards

Discovery under the Federal Rules is intended to reveal relevant documents and testimony, but this process is supposed to occur with a minimum of judicial intervention. See

8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2288, at 655-65 (Civil 2d ed. 1994). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense–including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons having knowledge of any discoverable matter." Fed. R. Civ. P. 26(b)(1) (effective Dec. 1, 2007). For good cause the Court may order discovery "of any matter relevant to the subject matter involved in the action" with relevant information not necessarily admissible at trial to be discoverable, and "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence," id. Federal Rule of Civil Procedure 37(a) allows a party to apply to the Court for an order compelling discovery, with that motion including a certification that the movant in good faith conferred or attempted to confer with the party not making the disclosure to secure that disclosure without court intervention. Fed. R. Civ. P. 37(a)(2)(A).

II.     Application

Gary Ortolano was plaintiff's live-in boyfriend in February 2004 and was the reason for the police's "well-being" visit of plaintiff for the first incident (see Docket No. 64, Pl. Atty. Reply Aff. ¶ 8). Plaintiff demanded six categories of documents as a follow up to deposing Sergeant Luce, and three categories of documents from defendant Meyers' deposition (Docket No. 61, Ex. A; see Docket No. 63, Village Defs. Atty. Aff. ¶¶ 4-9, 10-12). The Village defendants sought guidance on some of these demands (see generally Docket No. 63) and the Court ordered some items to first be provided to the Court for in camera inspection (Docket No. 65, Order at 7-8, 9, 10). Given that the materials sought by plaintiff involves a third-party

and background information to the events leading to this action, the Village defendants were ordered to produce these items for in camera inspection to determine relevant items to this action for production to plaintiff and redaction of irrelevant materials (Docket No. 65, Order at 7-8).

Plaintiff's fourth demand sought an unredacted copy of an investigation involving non-party Gary Ortolano (Docket No. 61, Ex. A, Luce Request No. 4). The Village defendants seek guidance on this request, offering to provide the file for in camera review (Docket No. 63, Village Defs. Atty. Aff. ¶ 7). Plaintiff replied that the Village defendant made comments to her that they were after Ortolano and that she was warned not to continue living with him (Docket No. 64, Pl. Atty. Reply Aff. ¶ 8) and argued that Ortolano's file is necessary on her theory that defendants used her mother's concern about plaintiff's well being with Ortolano "as a guise to harass and threaten her and to 'get' Mr. Ortolano" (id.). She did not object to prior in camera inspection of these materials.

Plaintiff's last request arising from Sergeant Luce's deposition was for the copy of the unredacted arrest and conviction record of Ortolano within the Village of Fredonia (Docket No. 61, Ex. A, Luce Request No. 6; see Docket No. 64, Pl. Atty. Reply Aff. ¶ 8). The Village defendants ask for direction whether they have to produce these records for a person not related to this action (Docket No. 63, Village Defs. Atty. Aff. ¶ 9). Previously, this Court found that disclosure of Ortolano's arrest record in Fredonia and his conviction record would lead to discovery of admissible evidence toward plaintiff's theory of police harassment of Ortolano and, by extension, of her (Docket No. 65, Order at 9; see Docket No. 64, Pl. Atty. Reply Aff. ¶ 8). As with the other records involving Ortolano, the Village defendants were ordered to submit them

for <u>in camera</u> inspection by the Court prior to producing those portions designated by the Court to plaintiff (Docket No. 65, Order at 9).

As for requests made during the deposition of defendant Meyers, plaintiff asked for copies of police reports, documents, incident reports, and the like regarding Ortolano in Fredonia from June 1998 to February 4, 2004 (Docket No. 61, Ex. A, Meyers Request No. 2) and a copy of all reports regarding Ortolano being armed with a weapon, threatening suicide, and threatening to shoot any officer coming to the house (<u>id.</u>, Meyers Request No. 3). The Village defendants again seek Court guidance producing information regarding Ortolano since he is not a party and has not authorized such disclosure (Docket No. 63, Village Defs. Atty. Aff. ¶¶ 11, 12).

The key here is whether a particular item is relevant to a claim or defense in this action or is reasonably calculated to leading to admissible evidence, Fed. R. Civ. P. 26(b)(1). What is relevant is information up to the date of the first arrest on February 4, 2004, and any interactions between the village police, Ortolano, and plaintiff. After review of the <u>in camera</u> materials provided and balancing what is relevant to this action against the privacy interests of Ortolano and those named in the documents other than the parties to this action, the Global Subject Activity Report **should be produced**, since that report summarizes the incidents and arrests involving Ortolano contained in the Case Reports provided, but that Subject Activity Report should be **redacted** to eliminate arrests and incidents **not involving plaintiff** after February 28, 2004. The summary Subject Activity Report has the benefit of revealing Ortolano's arrest record without delving into the irrelevant details. Included among the Case Reports is purported domestic violence incident at Ortolano's parents' house that involved plaintiff (Case Report, Nov. 8, 2004); this report should be produced as an example of a report involving plaintiff and

Ortolano (see also Case Reports of June 18, 2003).  As for Case Reports not involving plaintiff, **it is not necessary** for the Village defendants to produce these specific reports.

As for Ortolano's Aegis report, that also should be **produced**.  It is responsive to plaintiff's request for Ortolano's general Fredonia arrest and conviction record and her specific requests for reports regard Ortolano committing particular offenses.

The Village defendants included other documents for in camera review, including the Case Report for the February 4, 2004, arrest (Pl. Ex. 1 from Apr. 6, 2006, deposition); the village police department's General Order regarding domestic violence (Pl. Ex. 2 from Apr. 6, 2006, deposition); the October 1998 memorandum from Meyers regarding domestic violence training; a sign-in sheet for a similar training in July 1998 attended by Luce; and a press release announcing a commendation for Luce.  There is no privilege or other issue that precludes their disclosure and they may lead to admissible evidence and are relevant.  If not already produced, these items **should be produced forthwith**.

## CONCLUSION

For the reasons stated above, plaintiff's motion to compel (Docket No. 61) is **granted in part, denied in part,** as indicated above.  The Village defendants shall produce the items identified above (or as ordered redacted above) **forthwith**.  Chambers will return to defense counsel the in camera items.

So Ordered.

*/s/ Hugh B. Scott*
Honorable Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
April 4, 2008